Good morning, Your Honors. My name is Brent Blakely and I represent the plaintiff in this action. Today I'm going to be focusing on three of the central issues surrounding the trial court's erroneous grant of summary judgment in this case. The first two deal with fundamental due process issues regarding how courts decide summary judgments in the circuit. The first one is the fundamental weighing of facts. In this case, where the trial judge weighed facts concerning plaintiff's claims for profits, in this case, on both a theory of actual damages and on a theory of unjust enrichment for profits. The second very fundamental due process issue is going to be notice. And that relates to the district court's sua sponte rulings on the remaining elements of plaintiff's damages, that being injunctive relief, attorney's fees, and counterfeit damages. The third issue I'll be addressing relates to the bond. And that is particularly when is there a wrongful restraint pursuant to Federal Rule of Civil Procedure 65C that would trigger payment of a bond. Okay. Well, on the bond issue first. Yes, Your Honor. Would you address that first? I will be happy to address that first, Your Honor. Courts addressing cases where there's – where someone's been wrongfully enjoined have universally held that someone is wrongfully enjoined when they – when it's decided that they were entitled to do all along what they were restrained from doing. And that is usually decided after a final determination on the merits. This circuit – It's true with respect to preliminary injunctions. Yes, Your Honor. What – what – in this case, what was – there was a temporary restraining order? Here's what happened, Your Honor. There was a seizure order and a temporary restraining order. And my co-counsel and the investigators went down with law enforcement to conduct the seizure. But instead of seizing anything, they entered into a written agreement with opposing party after the opposing party had a chance to confer with counsel that nothing would be touched, nothing would be restrained pursuant to the order, but instead everybody would just operate at standstill until the court had a chance to look at the issues on the court. They wouldn't do business – any business until the – They wouldn't – they wouldn't move the products bearing our client's trademark. Right, right. They can sell other products or do whatever they want.  I think the seizure was in early December, Your Honor. And so the agreement was until five or six days later when the court was scheduled to have the preliminary injunction hearing, they wouldn't sell any of the product. So the – nothing was ever served, nothing was ever seized. What then happened is there was an enormous amount of product that was in the warehouse. And that is one of the factors we took into account that, you know, we're going to have to bring in eight semis down here to move this stuff out. And the defendants came and said, this would create incredible hardship on us not to sell this. Why don't we just allow to sell this and then we'll sort it out with damages at a later date? Because by us selling it, you'll have more money to pay for damages in the case. And on that basis, the district judge held that, all right, I'm not going to grant the preliminary injunction. The case which the defendants rely upon is the Qualcomm case, obviously. And I think the Qualcomm case runs contrary to all of this circuit's and other circuits' authority dealing with when someone is wrongfully enjoined, as well as the case that it relies upon, the Rocky Mountain case. In the Rocky Mountain case, the court came to the decision to grant the summary judgment on bond at that time because there were no remaining claims dealing with injunctive relief remaining. And I'll cite specifically from the Court's ruling in Rocky Mountain v. Federal Insurance Company. It says, The remainder of the lawsuit now pending is unrelated to the issue of injunctive relief. Nothing will be gained by waiting until the case is resolved before allowing the wrongful injunction action to proceed. I consider the State court's decision on the preliminary injunction to be the final decision on the merits of the purposes of this action. So in that case, the issue of injunctive relief was over at the time that the preliminary Tell me, just help me with the chronology. There was a restraining order. In our case. Yes. In your case, there was a restraining order. Then there was a hearing on the preliminary injunction. Yes, Your Honor. The bond was given to secure the restraining order? The bond was given pursuant to, I think, both Section 65C and 15 U.S.C. 1116. I mean, so what was it to secure? What order was it to secure? It was really the seizure. It was in connection with both. The original. It was in connection with it. What happens is you go down to these, to get these seizure orders. I'm sure Your Honor is fairly aware of it. And you get a temporary restraining order and seizure order. And it's very detailed what you have to lay out to do that. And one of the requirements is you have to post a bond. Right. And that's what you did. And that's what we did. We posted the bond. And then we went down to actually. You hadn't had any hearing yet. No. Okay. That's why you have to post the bond. Right. Then you had the hearing on the preliminary injunction. Yes, Your Honor. And what happened there? The court decided not to grant the preliminary injunction, to go ahead and let the defendant sell the product. Okay. Or not let them, but not enjoin them from doing it. So in other words, so was the court in effect saying that there shouldn't have been a restraining order? I don't think the court said that. I think the court said it was not going to enjoin them from selling the product. And, again, the primary argument was that they were sitting on all this inventory, and that if they didn't move this inventory, everyone was going to be hurt. And then what finally happened with the, was there another hearing on the permanent injunction? No. That was it, Your Honor. That was it, because we were moving along, all right, you know, that's a setback, but we'll, you know, we think we're going to get the permanent injunction after a trial on this issue. And that's where I think our case is in line with all of the circuit rulings, as well as Rocky Mountain, and where Qualcomm is really an exception, and I think bad law. Because in our case, a preliminary or permanent injunction is still in play, and is one of the primary remedies that trademark holders can obtain in trademark cases to protect their marks. Well, what's the status of the case now? Well, that goes to the second appeal. The second appeal, what happened was, is then they filed a motion for summary judgment on our profits damages, and the Court weighed the evidence with regard to those damages, and then I think threw in everything else just to get rid of the case, and here we are. So the case is? Well, so this goes to the question of whether or not the, it was an order disposing of the entire case? Correct, Your Honor. Okay. There were two appeals. Right. And we immediately appealed based upon, I think we're required to immediately appeal based upon the bond issue, and that just kind of trailed along while this other appeal was being briefed out and then consolidated. Unless Your Honors have any? What's the effect of the Court's conclusion that the plaintiff has not provided sufficient evidence to establish that the parties are in direct competition? That goes to the second, that's not the bond issue, Your Honor. I understand that. That goes to the merits. That goes to the merits of the appeal, and that is? What's the effect of that? If that's true, what's the effect? That's the Court weighing the evidence. The other Court says you haven't provided sufficient evidence. The Court does that all the time. There's no genuine issue of material fact. You haven't shown enough to establish that the parties are in direct competition. If you're not in direct competition, what's the effect of that on your case? That would go towards actual damages. In other words, our client's ability to get profits as a measure of lost income on an actual damages theory. And I'll move on to that issue, Your Honor. We presented evidence that we sell the same type of merchandise, that we sell to some of the same stores. We both sell to Nordstrom's. That they go to the same trade shows, which is obvious from the confrontation at the Magic Show in Las Vegas. That some of customers from UBU actually went into Nordstrom's and purchased UBU or, excuse me, defendant's products, believing that they were plaintiff's products, which is evidence of actual confusion, which I'm sure Your Honors are all aware is very, weighs very heavily in favor of a likelihood of confusion. So I think we presented evidence that the, that they are in competition, or at least tribal issues of fact on that matter. And the Court just decided to weigh the evidence and held that it wasn't, you know, the trial just said it wasn't sufficient. But the fact of the matter is. I did not market and sell to the same stores. Why be normal sales to UBU, to specialty stores, boutiques, resort stores, casino gift shops, hotel, et cetera, et cetera. Why am I selling to department stores, retail chain? It goes through a whole thing. There's no clear evidence the parties advertise in the same manner. You wipe the normal sales clothings in the MISI category, which consists of women between 25 and 45. I mean, it goes through a whole list. District Court goes through a whole list of why this is a, these operations are not in direct competition. And they're putting, and again, Your Honor was talking about labels earlier. I mean, MISIs, juniors, it's the same. They're selling to the same youthful demographic, Your Honor, from the teens and 20s. That is the focus of both defendant's business and my client's business. They mention, oh, we sell to retail chains. And I think they mentioned Dillard's, Nordstrom's, and one other. And I submitted in the excerpts and in opposition to the motion for summary judgment their records relating to the sales from Nordstrom's, which were significant. Excuse me, Your Honor. And it is also significant that our clients were selling to Nordstrom's, and then Nordstrom's stopped buying our clients' merchandise at the same time that they started selling. What sizes do you market to? Excuse me, Your Honor. What sizes do you market to? What size? Yeah. I'm just, the MISI and the junior, I'm a little confused. And I think it's meant to be confusing. It's, we sell to the junior, we sell to people in the 18s and 20s, Your Honor, both parties. Do you sell junior sizes? I'm not sure what, I mean. Well, okay. I mean, in other words, we're not selling. I mean, there's different departments in the store. When I say. You buy one size chain. Yes, Your Honor. And there's another department where you buy another size chain. Well, I think it's, I think it's, I think it's very telling that several of UBU's customers went into Nordstrom's, saw prominently displayed defendant's clothing in the Nordstrom store, thought it was ours and bought it. How do you know it is? It's in their declarations. We talked to them. I think one was deposed. Did you send them in there? No, Your Honor. I absolutely did not. Okay. I think we'd like to hear from the other side. There's another. What about the counterfeiters? No, there's actually a very, another important issue with regard to the profits damages based upon an unjust, the disgorgement, which I think the court really set an impossible standard and misinterpreted the law. And what the court did essentially was, you know, in every case discussing, you talk about wealthiness. In every case discussing, it talks about there has to be a deliberate or knowing infringement. And in this case, you had the cease and desist letter that was sent on November 27th, 2001. And Your Honors, I know, are very aware of trademark law. I mean, that is common practice. And that's what trademark holders, the first thing they do is put people on notice. Right. That they're violating your rights. They put them on, and there's a reason for doing that. It's for this very section, and also, frankly, for criminal actions under Penal Code 350. And they use those cease and desist orders to put them on notice. You are now on notice that you're infringing our rights. Stop doing it. I guess I'm not understanding the point that you're trying to make. Well, in this case, and then also our client objected in a face-to-face confrontation during the trade show. What happened in this case is the trial judge says that evidence is irrelevant, so long as the defendant believed that he was acting in good faith. Okay. That's what the Court held. Your point is the counterfeit claim got lost, and it wasn't decided? Well, this is – I'm not even on the counterfeit claim, Your Honor. I'm on the – I'm on the – I'm trying to get this off. I know. I'll move it along. 15 U.S.C. 1117 subsection A deals with what I'm talking about right now, not B and C. And it's the unjust enrichment process. Right. Right. I think – and you're saying that the – The Court misconstrued the law. I mean, every case dealing with this issue has held that knowledge is the key factor.  I think we do understand. Great. Thank you, Your Honor. Good morning, Your Honors. I'm Dennis Martin, appearing for the FLEs, David Barrett, and why am I, James Ware. If I may answer your question, Judge Schroeder, I think there are half sizes, the juniors. There are sizes that are sized in between. My understanding is the juniors go in 3, 5, 7, 9, 11. That's right. Odds. Yes. Go in 6, 8, 10, 12, 14. And if you're a junior, you don't shop in the Mrs. And if you're a Mrs., you don't shop in the Mrs. That's why they weren't competing. Yeah, it's odds. Yeah. What reasons did the Court give for denying the request for a preliminary injunction? She stated very clearly as the only reason for denying it was that they had failed to show the likelihood of success on the merits, namely lack of likelihood of confusion. Squarely what she did. There was no written order. Not because you'd made some kind of a deal and everybody was going to be better off just selling all kinds of things and piling up a bunch of money for damages? No way. My reading was that she was In effect that the restraining order, they weren't entitled to a restraining order. It's hardly briefed here, but the 800-pound gorilla in this case is that they made a very improvident application procedure or ex parte that they waited 10 months to do. And then when they did get around to it, they hadn't made any inquiry to find out what the situation was. At the time that they actually brought the seizure order, my client had already ordered and had completed goods that would come into port probably for spring and had a warehouse full of goods with the old labels that he'd already given up on. Nobody gets an award here for good communication. My client doesn't. But if you're going to bring an ex parte suit, you better make sure what your facts are before you do it. The only basis for the seizure order was to claim that these goods were It's just the reason they were not in the first place. That's right. That's right. Well, I think we got your argument well in a hand. Thank you. The bond issue is interesting. I think we understand. Yeah. I mean, I don't. Is there anything that you really feel that you're compelled to? Not really. What about the counterfeiting claim? Counterfeiting claim, their problem, there was late notice by the court in the temporary restraining, in her temporary order for summary judgment. She issued a temporary by fax or email six days, I think, before the hearing that did cover counterfeiting. They had briefed it in their opposition brief. Not heavily. I had assumed that no one would have the temerity to raise a counterfeiting claim. After the court. Well, if the court had said there's not even any likelihood of confusion under a regular standard, of course, you're right. There's not going to be a counterfeit. And the only additional the only evidence on counterfeiting that that's possible is whether it meets the statutory definition, which is a serious. Was there an argument? Yes. And it was argued. There is a provision in Rule 56 that if you if it's not if you don't take care of the entire complaint, you're supposed to identify what it is that you're. Moving out, I think. In I'm sorry. In my in my own motion or. No, I'm talking about the district court. Oh, yeah. It's taking care of the entire action. It's supposed to say what it's not taking care of. Right. And but it did because it had been raised and it was argued. Nothing was left. And I think the key point is that what else could you say beyond the argument? Because you're just talking about two labels. There's no there's no other evidence other than looking at what what the physical exhibits show. And that's a no brainer. Thank you. Thank you very much. I'm going to appear here on Thursday as well. I can't borrow argument from Thursday. Thank you. You want credit. We'll be back. The clock will start ticking all over again. Very good. Thank you. I think I think what we've got is the carts in front of the horse on this case, Your Honor. Is your honors. Well, no. Likely to confusion. A method versus sleep craft factors are involved questions of fact and facts that need to be weighed by a jury. And so the ultimate determination on whether a permanent injunction is appropriate, whether or not that these are sold in similar channels, whether the identity. You have to have enough evidence in order to get to the jury. And I think, Your Honor, what happened was is they basically circumvented that and narrowly went after these profits issues. We understand your position. And but also in what Judge Trott was talking about, I think it's with regard to the counterfeiting issues, Your Honor. There was no notice, none whatsoever. The first we ever even got an inkling that the court was even considering these issues was in the tentative that was faxed to us right before the hearing. Six days. I think it was right before the weekend. Was this motion labeled a motion for partial summary judgment? No. No. Okay. Thank you. So you say you got notice. What did you do when you got notice that the court was considering? I pointed it out to the court during that hearing. And I think I provided. What did the court say? Court submitted. I think the response was, well, the motion is submitted. Taken under submission. Did you say, did you argue the merits of the counterfeiting thing? I did not. I just pointed out to the court that this was not part of their motion and that the case is still, it hadn't been addressed. And it wasn't. And that's why courts, including central district, had very specific requirements as to what you need to have in a motion for summary judgment, because as routine as it seems these are, it really is a drastic remedy. You're denying someone their right to a trial. Thank you, Your Honor. The case just argued is submitted for decision. That concludes the Court's session.
judges: Schroeder, Pregerson, Trott